IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Gregory Tucker Windley, #292034, | ) | C/A No.: 1:11-2304-TMC-SVH |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | |
| A.J. Padula, Warden of Lee Correctional | ) | |
| Institution, | ) | |
| | ) | |
| Respondent. | ) | |

Petitioner Gregory Tucker Windley is an inmate at the Lee Correctional Institution of the South Carolina Department of Corrections who filed this pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. This matter is before the court pursuant to 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2) (D.S.C.) for a Report and Recommendation on Respondent's return and motion for summary judgment. [Entry #24, #25]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the court advised Petitioner of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Respondent's motion by February 27, 2012. [Entry #26]. Petitioner timely filed a response. [Entry #30].

Having carefully considered the parties' submissions and the record in this case, the undersigned recommends that Respondent's motion for summary judgment be granted.

1

I.      Factual Background

At Petitioner's criminal trial, the victim testified about her family having shared a home with Petitioner, who had been her mother's boyfriend and lived on and off with her family for approximately one year. The victim testified Petitioner was at her house uninvited when he knocked her out, cutting her ear, bound her with tape and gagged her with a sock, pressed a knife to her throat, cut her clothes, and sexually assaulted her. Kendrick Geathers was the victim's friend who testified he found her in the house gagged, bound with tape and bleeding from an injury to her ear.  He and she testified that she immediately identified Petitioner as having raped her.  After the police were called, the victim went to the hospital, where a rape kit was processed, including DNA samples taken from her and from her panties. The victim and her mother identified the panties that were tested as belonging to the victim.

Petitioner did not contest that he and the victim were in the house on the night in question, but he denied the assault. He also testified that it was his girlfriend's habit to "wipe with something that she had on previously that day or whatever was nearby" in explanation as to why his semen would be on the panties.  Petitioner claimed that the panties belonged to his girlfriend and not the victim. Petitioner also testified he left the state the day the incident was reported because there was "bad blood" between him and his girlfriend's family following a previous fight in which her leg was broken.

II.     Procedural Background

Petitioner was indicted by the Florence County grand jury during the October 2001 term of court for criminal sexual conduct first degree ("CSC"); kidnapping and burglary first degree; and possession of a knife during the commission of a violent crime ("the weapon charge"). [Entry #24-7 at 52-53]. He was represented by B. Scott Suggs, Esq. at a jury trial on March 24-28, 2003 before the Honorable J. Michael Baxley. [Entry #24-1 at 3]. The jury found Petitioner guilty of CSC, kidnapping, and the weapon charge. [Entry #24-6 at 12]. The jury acquitted Petitioner on the burglary charge. *Id.* Judge Baxley sentenced Petitioner to 30 years for CSC, 30 years concurrent for kidnapping, and 5 years consecutive for the weapon charge. [Entry #24-6 at 38].

Petitioner appealed his convictions and sentences to the South Carolina Court of Appeals ("Court of Appeals"). [Entry #24-7 at 89-91].   On appeal, Petitioner was represented by Aileen P. Clare of the South Carolina Commission on Appellate Defense who filed a brief on January 18, 2005 raising the following issue: "Did the lower court err by ruling that the state did not exercise its peremptory strikes to exclude black jurors because of their race?" [Entry #24-9 at 4].

On August 30, 2005, the Court of Appeals filed an unpublished decision affirming the conviction. [Entry #24-7 at 92-94]. The remittitur was issued on September 15, 2005. [Entry #24-7 at 95].

Petitioner filed an application for post-conviction relief ("PCR") on September 13, 2005 [Entry #24-6 at 46], as amended February 6, 2006, on or about February 14, 2006,

March 27, 2006, April 10, 2006, and March 26, 2008, in which he alleged various grounds of ineffective assistance of trial and appellate counsel. [Entry #24-6 at 52-106]. A PCR evidentiary hearing was held before the Honorable Benjamin H. Culbertson on December 16, 2008, at which Petitioner and his PCR counsel, Charles T. Brooks III, Esq. appeared. [Entry #24-6 at 107]. On January 9, 2009, Judge Culbertson entered an order of dismissal. [Entry #24-7 at 39-47].

Petitioner appealed from the denial of PCR and was represented by M. Celia Robinson, Esq., who filed a petition for writ of certiorari in the South Carolina Supreme Court on December 17, 2009. [Entry #24-11]. The petition raised the following issues:

1) Did the PCR judge err in denying relief despite trial counsel's providing ineffective assistance of counsel by informing the jury that the defense case was the kind he did not like to present, i.e., a fabrication he had managed to put together?

2) Did the PCR judge err in denying relief despite trial counsel's provision of ineffective assistance of counsel in that he failed to investigate the DNA issue and he failed to consult an expert in DNA despite the fact that trial counsel was not well versed in the science of DNA in general or with the application of DNA science in this particular case?

[Entry #24-11 at 3].

The Supreme Court of South Carolina denied the petition on May 26, 2011. [Entry #24-13]. On June 6, 2011, Petitioner filed a petition for rehearing [Entry #24-14] and a motion pursuant to Rule 59(e) [Entry #24-15], both of which the court denied on July 21, 2011. [Entry #24-16, #24-17]. The remittitur was likewise issued on July 21, 2011. [Entry #24-18].

Petitioner filed this federal petition for a writ of habeas corpus on or about August 18, 2011.[1] [Entry #1].

III.  Discussion

A.  Federal Habeas Issues

Petitioner now asserts he is entitled to a writ of habeas corpus on the following grounds:

**Ground One:** *Batson v. Kentucky*[2] Challenge of Peremptory Strikes

**Ground Two:** Did the PCR court error when it ruled trial counsel not ineffective in failing to investigate and hire a DNA expert?

**Ground Three:** Did the state's withholding of exculpatory evidence violate Petitioner's due process rights?

**Ground Four:** Did the PCR court violate Petitioner's 5th and 14th Amendment rights to due process by not ruling on all PCR issues?

**Ground Five:** Did the state's stipulation violate Petitioner's constitutional rights to confront witnesses against him?

[Entry #1 at 5-11, #1-1].

B.  Standard for Summary Judgment

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there

---

[1] The petition was received and docketed by the court on August 29, 2011. However, because Petitioner is incarcerated, he benefits from the "prison mailbox rule." *Houston v. Lack,* 487 U.S. 266 (1988).  Although there is no prison mailroom stamp, the petition is dated August 18, 2011. [Entry #1 at 14].
[2] *Batson v. Kentucky*, 476 U.S. 79 (1986)( the use of a peremptory challenge for a racially-discriminatory purpose offends the Equal Protection Clause).

is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Rule 56(c) mandates entry of summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

In deciding whether there is a genuine issue of material fact, the evidence of the non-moving party is to be believed and all justifiable inferences must be drawn in favor of the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). However, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.* at 248.

The moving party has the burden of proving that summary judgment is appropriate. Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). Further, while the federal court is charged with liberally construing a complaint filed by a *pro se* litigant to allow the development of a potentially meritorious case, *see, e.g., Cruz v. Beto*, 405 U.S. 319 (1972), the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. *Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990).

C.    Habeas Corpus Standard of Review

1.    Generally

Because Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. *Lindh v. Murphy*, 521 U.S. 320 (1997); *Breard v. Pruett*, 134 F.3d 615 (4th Cir. 1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication: (1) resulted in a decision that was contrary to, or involved an unreasonable application of clearly established federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable application of the facts in light of the evidence presented at the state court proceeding. 28 U.S.C. § 2254(d)(1)(2); *see Williams v. Taylor*, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Id*. at 410.   Moreover, state court factual determinations are presumed to be correct and the petitioner has the burden of rebutting this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

2.    Procedural Bar

Federal law establishes this court's jurisdiction over habeas corpus petitions.   28 U.S.C. § 2254.   This statute permits relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States[,]" and requires that a petitioner present

his claim to the state's highest court with authority to decide the issue before the federal court will consider the claim. *Id.* The separate but related theories of exhaustion and procedural bypass operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. A habeas corpus petition filed in this court before the petitioner has appropriately exhausted available state-court remedies or has otherwise bypassed seeking relief in the state courts will be dismissed absent unusual circumstances detailed below.

a. Exhaustion

Section 2254 contains the requirement of exhausting state-court remedies and provides as follows:

(b)    (1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court, shall not be granted unless it appears that—

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B) (i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

(2) An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3) A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)    An applicant shall not be deemed to have exhausted the
remedies available in the courts of the State, within the meaning of this
section, if he has the right under the law of the State to raise, by any available
procedure, the question presented.

28 U.S.C. § 2254.

The statute requires that, before seeking habeas corpus relief, the petitioner first
must exhaust his state court remedies. 28 U.S.C. § 2254(b)(1)(A). "To satisfy the
exhaustion requirement, a habeas petitioner must present his claims to the state's highest
court." *Matthews v. Evatt*, 105 F.3d 907, 911 (4th Cir. 1997). Thus, a federal court may
consider only those issues that have been properly presented to the highest state courts with
jurisdiction to decide them.

In South Carolina, a person in custody has two primary means of attacking the
validity of his conviction: (1) through a direct appeal, or (2) by filing an application for
PCR.   State law requires that all grounds be stated in the direct appeal or PCR application.
Rule 203 SCACR; S.C. Code Ann. § 17-27-10, *et seq.*; S.C. Code Ann. § 17-27-90;
*Blakeley v. Rabon*, 221 S.E.2d 767 (S.C. 1976).   If the PCR court fails to address a claim
as is required by S.C. Code Ann. § 17-27-80, counsel for the applicant must make a motion
to alter or amend the judgment pursuant to Rule 59(e), SCRCP.   Failure to do so will result
in the application of a procedural bar by the South Carolina Supreme Court. *Marlar v.
State,* 653 S.E.2d 266 (S.C. 2007).[3] Furthermore, strict time deadlines govern direct appeal

---

[3]In *Bostick v. Stevenson*, 589 F.3d 160, 162–65 (4th Cir. 2009), the Fourth Circuit found
that, prior to the Supreme Court of South Carolina's November 5, 2007 decision in *Marlar*,

and the filing of a PCR in the South Carolina courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

Furthermore, in filing a petition for habeas relief in the federal court, a petitioner may present only those issues that were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, regardless of whether the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts. *Richardson v. Turner*, 716 F.2d 1059 (4th Cir. 1983)*; Patterson v. Leeke*, 556 F.2d 1168 (4th Cir. 1977).

b.     Procedural Bypass

Procedural bypass, sometimes referred to as procedural bar or procedural default, is the doctrine applied when a petitioner who seeks habeas corpus relief as to an issue failed to raise that issue at the appropriate time in state court and has no further means of bringing that issue before the state courts. In such a situation, the person has bypassed his state remedies and, as such, is procedurally barred from raising the issue in his federal habeas petition. Procedural bypass of a constitutional claim in earlier state proceedings forecloses consideration by the federal courts. *See Smith v. Murray*, 477 U.S. 527, 533 (1986). Bypass

South Carolina courts had not been uniformly and strictly enforcing the failure to file a motion pursuant to Rule 59(e), SCRCP, as a procedural bar.   Accordingly, for matters in which there was a PCR ruling prior to November 5, 2007, the court will not consider any failure to raise issues pursuant to Rule 59(e) to effect a procedural bar.

can occur at any level of the state proceedings if the state has procedural rules that bar its courts from considering claims not raised in a timely fashion.

The South Carolina Supreme Court will refuse to consider claims raised in a second appeal that could have been raised at an earlier time. Further, if a prisoner has failed to file a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in state court. If the state courts have applied a procedural bar to a claim because of an earlier default in the state courts, the federal court honors that bar. As the Supreme Court explains:

> . . . [state procedural rules promote] not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and while the attention of the appellate court is focused on his case.

> *Reed v. Ross*, 468 U.S. 1, 10–11 (1984).

However, if a federal habeas petitioner can show both (1) "'cause' for noncompliance with the state rule[,]" and (2) "'actual prejudice resulting from the alleged constitutional violation[,]'" the federal court may consider the claim. *Smith v. Murray*, 477 U.S. at 533 (quoting *Wainwright v. Sykes*, 433 U.S. 23, 84 (1977)). When a petitioner has failed to comply with state procedural requirements and cannot make the required showing of cause and prejudice, the federal courts generally decline to hear the claim. *Murray v. Carrier*, 477 U.S. 478, 496 (1986).

If a federal habeas petitioner has failed to raise a claim in state court and is precluded by state rules from returning to state court to raise the issue, he has procedurally

bypassed his opportunity for relief in the state courts and in federal court. A federal court is barred from considering the filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. *See Matthews v. Evatt*, 105 F.3d at 915 (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Teague v. Lane*, 489 U.S. 288, 297–98 (1989); *George v. Angelone*, 100 F.3d 353, 363 (4th Cir. 1996); *Bassette v. Thompson*, 915 F.2d 932, 937 (4th Cir. 1990)).

### 3. Cause and Actual Prejudice

Because the requirement of exhaustion is not jurisdictional, this court may consider claims that have not been presented to the South Carolina Supreme Court in limited circumstances in which a petitioner shows sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, *Coleman*, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. *Murray*, 477 U.S. at 495–96. A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. *Id.* Absent a showing of "cause," the court is not required to consider "actual prejudice." *Turner v. Jabe*, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. *Murray*, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error.

4.      Ineffective Assistance of Counsel Claim

To prevail on his ineffective assistance of counsel claim, Petitioner must show (1) that his trial counsel's performance fell below an objective standard of reasonableness, and (2) that a reasonable probability exists that but for counsel's error, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 694 (1984).   Petitioner bears the burden of proving an error and prejudice in his ineffective assistance of counsel claim. *Id.* The court must apply a "strong presumption" that trial counsel's representation fell within the "wide range of reasonable professional assistance," and the errors must be "so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." *Harrington v. Richter*, 131 S.Ct. 770, 787 (2011). This is a high standard that requires a habeas petitioner to show that counsel's errors deprived him "of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687. That the outcome would "reasonably likely" have been different but for counsel's error is not dispositive of the prejudice inquiry. Rather, the court must determine whether the result of the proceeding was fundamentally unfair or unreliable. *Harrington*, 131 S.Ct. at 787–88; *Strickland*, 466 U.S. at 694.

The United States Supreme Court has cautioned that "'[s]urmounting *Strickland*'s high bar is never an easy task[,]' ... [e]stablishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Harrington*, 131 S.Ct. at 788 (*quoting Padilla v. Kentucky*, 130 S.Ct. 1473, 1485 (2010)). When evaluating an ineffective assistance of counsel claim, the petitioner must satisfy the highly deferential

standards of 28 U.S.C. § 2254(d) and *Strickland* "in tandem," making the standard "doubly" more difficult. *Harrington*, 131 S.Ct. at 788. In such circumstances, the "question is not whether counsel's actions were unreasonable," but whether "there is any reasonable argument that counsel satisfied *Strickland*'s deferential standards." *Id.* The unreasonableness of the state court determination must be "beyond any possibility of fairminded disagreement." *Id.* at 787. "If this standard is difficult to meet, that is because it was meant to be." *Id.* at 786. Section 2254(d) codifies the view that habeas corpus is a "'guard against extreme malfunctions in the state criminal justice system,' not a substitute for ordinary error correction through appeal." *Id., quoting Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979)).

D.      Analysis

1.      Procedurally-Barred Grounds

Respondent argues that the court should not address Petitioner's Grounds Three, Four, and Five, arguing that Three and Five are procedurally-barred because they were not raised in his direct appeal or PCR appeal.    Further, Respondent argues that Ground Four is not cognizable in a federal habeas action.   The undersigned agrees.

In Ground Three, Petitioner alleges his due process rights were violated by the state's withholding of exculpatory evidence. In Ground Five, Petitioner alleges his constitutional right to confront witnesses against him was violated by the state's stipulation.   To the extent that Grounds Three and Five were not raised in Petitioner's direct or PCR appeal, they were not fairly presented to the South Carolina appellate courts

and are procedurally-barred from federal habeas review. *See Coleman*, 501 U.S. 722 (stating that if an issue is not properly raised to the state's highest court and would be procedurally impossible to raise now, then it is procedurally barred from federal habeas review).

In Ground Four, Petitioner alleges that the PCR court violated his Fifth and Fourteenth Amendment rights to due process by not ruling on all PCR issues. Ground Four is a challenge to the PCR action, not a challenge to custody, and therefore, it is not cognizable in a federal habeas action.

### 2. Cause and Prejudice

Petitioner has not shown sufficient cause and prejudice to excuse the default of these grounds. In all cases in which a state prisoner has defaulted his federal claims in state court pursuant to an independent and adequate state procedural rule, federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice. Petitioner has failed to meet this burden. Thus, they are procedurally barred from consideration by this court and should be dismissed. *Id.*; *see* 28 U.S.C. § 2254; *Rodriguez v. Young*, 906 F.2d 1153, 1159 (7th Cir. 1990) ("Neither cause without prejudice nor prejudice without cause gets a defaulted claim into Federal Court."); *Mazzell v. Evatt*, 88 F.3d 263, 269 (4th Cir. 1996) (In order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been

different.); *Wainwright,* 433 U.S. at 88–91; *Murray*, 477 U.S. at 496; *Rodriguez*, 906 F.2d at 1159 (a fundamental miscarriage of justice occurs only in extraordinary cases, "where a constitutional violation has probably resulted in the conviction of one who is actually innocent") (*citing Murray*); *Sawyer v. Whitley*, 505 U.S. 333, 348 (1992); *Bolender v. Singletary*, 898 F. Supp. 876, 881 (S.D. Fla. 1995).

The existence of cause must ordinarily turn on whether the prisoner can show some objective factor external to the defense impeded counsel's or his efforts to comply with the state's procedural rule. *Murray*, 477 U.S. at 488. Petitioner fails to articulate cause for procedurally defaulting on Grounds Three and Five. Petitioner had a trial in which he raised no objection, had the opportunity for a direct appeal, a PCR hearing, and an appeal from the PCR in which to raise these issues. However, he failed to raise them, raise them properly, or preserve the issues for habeas review. Petitioner cannot establish cause and prejudice because he has abandoned the opportunities to preserve these issues.

In the alternative, Petitioner must show a miscarriage of justice. In order to demonstrate a miscarriage of justice, Petitioner must show he is actually innocent. Actual innocence is defined as factual innocence, not legal innocence. *Bousley v. United States*, 523 U.S. 614, 622 (1998). Petitioner cannot establish that the errors he complains of probably resulted in the conviction of an innocent person. *Sclup v. Delo*, 513 U.S. 298, 327 (1995). In order to pass through the actual-innocence gateway, a petitioner's case must be "truly extraordinary." *Id.* The court's review of the record does not support a showing of actual innocence.

During the trial, the solicitor presented the facts recited in the Factual Background section above, upon which the jury determined Petitioner guilty of the CSC, kidnapping, and the weapon charges against him. The undersigned finds Petitioner has failed to meet his burden, and therefore, the procedural bars apply as to Grounds Three and Five.

### 3. Merits Review of Ground One

In Ground One, Petitioner argues that the state improperly exercised its jury strikes on the basis of race. Petitioner's trial counsel filed a *Batson* motion challenging the solicitor's use of peremptory challenges to strike potential jurors who were African American, and in examining that motion, both the trial court and the Court of Appeals held that there was no discriminatory intent.

Petitioner raised this singular issue in his direct appeal, on which the Court of Appeals ruled as follows:

> Tucker, an African-American male, was indicted for first-degree criminal sexual conduct, kidnapping, first-degree burglary, and possession of a knife during the commission of a violent crime. During jury selection for Tucker's trial in March 2003, the State used its peremptory challenges to strike Juror #53, a black male; Juror #15, a black male; and Juror #142, a black female. Before the jury was sworn, Tucker made a motion under *Batson v. Kentucky*, 476 U.S. 79 (1986), challenging the State's use of its peremptory strikes to exclude black jurors. The State explained that it struck Juror #53 because he had served time on a "contempt charge for failure to pay child support. He also had a Magistrate level drug conviction." The State said it struck Juror #15 because the victim in this case was a female and the juror had made comments during the qualification process that elicited "a negative attitude toward (sic) women." Finally, the State argued it struck Juror #142 because she had "[m]agistrate level convictions for drugs and for breach of trust." As evidence of pretext, Tucker pointed out that the third juror seated by both parties was a white male who had a magistrate level offense for driving under suspension. The State explained that "there may, based on witness testimony, be some evidence brought in with regards to drugs and that's why

[it] kept all drug convictions out." The trial court held the State had shown "valid reasons for striking the jurors that were excused" and denied Tucker's motion.

. . . Tucker made a motion for a new trial based on his challenge of the peremptory strikes. Though no evidence of drugs came out at trial, the trial court denied Tucker's motion for a new trial, finding Tucker did not show the strikes were pretextual.

[Entry #24-7 at 92-93].

Respondent argues these initial factual findings were based on the record and supported by the arguments and factual findings as reflected in the trial transcript. [Jury Selection Transcript: Entry #24-8 at 18, 21-22, 25-29; post-trial motions: Entry #24-6 at 18-22]. Respondent notes that two separate judges heard, and rejected, the defense arguments on possible pretext: Judge Brogdon at jury selection, and Judge Baxley at the post-hearing, new trial motion.

In its legal analysis, the Court of Appeals found:

. . . Tucker did not carry his burden of persuasion in proving the State engaged in purposeful discrimination during the jury selection process. In this case, the State's primary reason for striking two jurors was because they had drug convictions, and counsel for the State was concerned with these jurors' reactions to testimony and evidence of drug use that potentially could come in during the trial of the case. Though there is some confusion as to the criminal history of Juror #26, a white male, there is no doubt he did not have a drug conviction. Tucker did not point to any other seated jurors of another race who were similarly situated to the stricken venire persons. The State struck the third juror for questionable comments regarding women, a potential problem because the victim was a female. Therefore, the record contains no indication that the State's reasons for striking the three black jurors were motivated by purposeful discrimination.

[Entry #24-7 at 94].

In reviewing the record, the undersigned finds that the solicitor presented detailed and specific race-neutral reasons for striking African American jurors in Petitioner's trial. Based on these reasons, the court finds no error in the trial court's finding that Petitioner failed to establish purposeful discrimination. The trial court's procedure and finding complied with *Batson,* 476 U.S. at 97-98 ("Once the defendant makes a prima facie showing [of racial discrimination], the burden shifts to the State to come forward with a neutral explanation for challenging black jurors.... The trial court then will have the duty to determine if the defendant has established purposeful discrimination."). The solicitor did not improperly rely on race or merely "deny[ ] that he had a discriminatory motive." *Id.* at 98. Further, Petitioner has made no showing that the solicitor's reasons were pretextual. *See generally United States v. Farrior*, 535 F.3d 210, 221 (4th Cir. 2008)(reciting one of prosecution's race-neutral reason as striking all jurors who had relative arrested on drug charges); *United States v. Grandison*, 885 F.2d 143, 149 (4th Cir. 1989)("Numerous valid factors may influence a prosecutor to strike a particular potential juror, including 'current and past employment, general appearance and demeanor, previous jury service, and the absence or presence of apparent prejudice.'") (citations omitted). Therefore, Petitioner's claim that his due process rights were violated when the trial court overruled his *Batson* challenge is without merit.

Because the trial court properly applied federal law to Petitioner's *Batson* claim at trial, and the Court of Appeals affirmed the trial court on that basis, Petitioner has failed to establish that the state court unreasonably applied federal law in addressing this claim.

Further, Petitioner fails to show that either the trial court or the Court of Appeals made an unreasonable determination of the facts in addressing the *Batson* issue. Thus, he is not entitled to federal habeas relief under 28 U.S.C. § 2254(d)(1) on Ground One.

4.    Merits Review of Ground Two

In Ground Two, Petitioner argues that his constitutional right to the effective assistance of counsel was violated by trial counsel's failure to hired a DNA expert. He complains that trial counsel improperly considered the DNA evidence a "red herring" or a "distraction" because the state relied upon the evidence in its case. He claims the DNA evidence had a "profound" effect on the jury. Petitioner argues, therefore, the PCR judge unreasonably determined that counsel was not ineffective in failing to hire a DNA expert.

At trial, the state presented a DNA expert from the South Carolina Law Enforcement Division. The expert testified to a match on the semen found on victim's panties, but testified that no semen was found on "the vulva, vaginal, or cervical swabs." [Entry #24-3 at 90-93]. Semen was found on one other item, but had an insufficient profile to match, although Petitioner could not be excluded. [Entry #24-3 at 91-92]. Defense counsel highlighted that the referenced match was to the semen found on the panties, not from the swabs and samples taken from the victim at the hospital. [Entry # 24-3 at 97].

PCR counsel advised the judge at the beginning of the PCR evidentiary hearing that he had retained a DNA expert to re-examine the evidence, but who opined that Petitioner's theory that the sample came from the mother's underwear was "highly unlikely."

Therefore, PCR counsel declined to present the expert because his "testimony is not going to be advantageous to my client." [Entry #24-6 at 120-121].

Trial counsel testified at the PCR hearing that he did not think "the DNA evidence was all that important." [Entry #24-7 at 24]. Petitioner admitted living in the house, and his DNA would have naturally been "all over that house. . . ." [Entry #24-7 at 24]. This was not a "stranger attack," and trial counsel believed the victim's identification and testimony "was the crux of the State's case." [Entry #24-7 at 24]. Trial counsel also testified that he believed the DNA evidence was more of a "distraction" in this particular scenario, and a "red herring," where identity was not at issue, nor was the possibility of Petitioner's DNA being on dirty clothes in the house. [Entry #24-7 at 25-26].

The PCR judge found:

Trial counsel's failure to have an independent DNA expert test the evidence collected at the scene does not rise to ineffective assistance of counsel when the DNA was not used for purposes of identification of the assailant and when there was ample testimony from witnesses that Applicant's DNA would be found in the house because he lived there and was the boyfriend of the victim's mother. . . .

Additionally, the Applicant did not carry his burden to show a reasonable probability that the result at trial would have been different had trial counsel . . . done what the Applicant alleges should or should not have been done.

[Entry #24-7 at 45-46].

First, the record reveals that Petitioner was not identified by the DNA evidence, as trial counsel testified at PCR. Petitioner's girlfriend was the victim's mother, so the DNA evidence was not critical to her identification of him. Petitioner himself did not deny that the semen sample would match, as he admitted living in the house, having access to the

clothes, and testifying that his girlfriend would wipe herself after intercourse with whatever cloth was nearby.

Second, Petitioner has failed to offer testimony from an expert witness that his trial counsel should have called negating the DNA evidence. Although Petitioner hired a DNA expert for the PCR hearing, the expert did not offer any exculpatory or otherwise helpful evidence for the defense that would have shown prejudice. Petitioner instead makes the conclusory allegation that his counsel was ineffective for failing to hire a DNA expert.

Given that Petitioner fails to specify any aspect of the DNA evidence he would hope to proffer, it is speculative to claim that a defense expert would have been able to contest it. Allegations of ineffective assistance, absent a specific proffer as to what favorable evidence or information would have been produced had counsel performed adequately, do not provide a basis for habeas relief. *See Beaver v. Thompson,* 93 F.3d 1186, 1195 (4th Cir.1996) (*citing Bassette v. Thompson,* 915 F.2d 932, 940–41 (4th Cir.1990)). Petitioner has not presented sufficient evidence to show that his trial counsel was constitutionally defective in his failure to obtain an independent expert witness to contest the DNA evidence and has failed to show a reasonable probability that an independent expert would have changed the outcome of his trial. *See Beaver,* 93 F.3d at 1195 ("[A]n allegation of inadequate investigation does not warrant habeas relief absent a proffer of what favorable evidence or testimony would have been produced."); *Yarbrough v. Johnson,* 490 F.Supp.2d 694, 738 (E.D.Va.2007) ("[P]etitioner's failure to articulate identifiable deficiencies with the prosecution's forensic evidence or testing protocol prevents him from

establishing a 'reasonable probability that, but for counsel's unprofessional conduct, the result of the proceedings would have been different.'" (*citing Strickland,* 466 U.S. at 694)).

Finally, even assuming Petitioner could present such an expert to contest the DNA evidence, Petitioner still fails to satisfy the prejudice prong of *Strickland.* This is not a case that turned on DNA evidence, but on the impact of the victim's testimony. Petitioner has failed to demonstrate a reasonable probability that expert testimony regarding DNA would cause the jury to question the victim's testimony, as corroborated by other evidence, including (1) her friend Geathers' testimony that he found her in the house gagged, bound with tape and bleeding from an injury to her ear [Entry #24-1 at 142-143]; (2) the medical testimony of injury, including a cut to her chest consistent with a knife cut as described [Entry #24-3 at 23-26]; and (3) Petitioner's admitted flight from the state the day the victim was found [Entry #24-4 at 50-51]. Because Petitioner fails to establish a reasonable probability of a different outcome under these assertions, he is not entitled to federal habeas relief under 28 U.S.C. § 2554(d)(1) on Ground Two.

IV. Conclusion and Recommendation

For the foregoing reasons, the undersigned recommends that Respondent's motion for summary judgment [Entry #25] be granted.

IT IS SO RECOMMENDED.

*Shiva V. Hodges*

July 30, 2012
Columbia, South Carolina

Shiva V. Hodges
United States Magistrate Judge

### Notice of Right to File Objections to Report and Recommendation

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
901 Richland Street
Columbia, South Carolina 29201

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).